UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO. 18-32417 |
| STEPHEN H. DERNICK, § | CASE NO. 18-32494 |
| DAVID DERNICK § | (Jointly Administered) |
| § | |
| DEBTORS § | |
| § | |
| DAVID DERNICK AND § | ADVERSARY NO. |
| STEPHEN H. DERNICK § | |
| Plaintiffs § | |
| § | |
| v. § | |
| § | |
| NORTHSTAR GAS VENTURES, LLC § | |
| DERNICK ENCORE, LLC § | |
| ROBERT CARSON § | |
| DAVID H. RUSSELL § | |
| DAVID H. RUSSELL FAMILY LTD § | |
| PARTNERSHIP, LLP § | |
| NORTHSTAR GAS VENTURES, LLC § | |
| ENCORE ALLIANCE § | |
| § | |
| DEFENDANTS § | |
| § | |

## COMPLAINT

STEPHEN DERNICK AND DAVID DERNICK, Plaintiffs and/or Debtors, file this Complaint against Dernick Encore, LLC, Robert Carson, David H. Russell, David H. Russell Family Ltd Partnership, LLP, Encore Alliance, and NorthStar Gas Ventures, LLC, pursuant to FED. R. BANKR. P. 7001(1), requesting actual and punitive damages, equitable relief, and respectfully shows the Court as follows:

**SUMMARY OF FACTS AND RELIEF REQUESTED**

Stephen and David Dernick file this Adversary Proceeding requesting actual and punitive damages against the Debtors' past business associates for fraud and breach of contract. The facts in this Adversary can be summarized as follows:

(**FIRST ISSUE SUMMARIZED**)

Stephen and David Dernick (the "Debtors") are two brothers who were extremely successful in the oil and gas business. The Debtors owned and worked for Dernick Land, LLC ("Dernick Land"). In March, 2016, Dernick Land entered into an agreement with Dernick Encore ("Encore"), where Encore agreed to pay Dernick Land $203,333.33 per month in management fees, plus expenses. Dernick Land worked for Encore for an entire year without receiving any payment or reimbursement for expenses. As a result of Encore's failure to pay Dernick Land approximately $2.8 million, the Debtors worked from March 1, 2016 through February 28, 2017, without receiving a salary.

(**SECOND ISSUE SUMMARIZED**)

Around the same time that Encore refused to pay Dernick Land the $2.8 million, the Debtors were simultaneously dealing with a completely unrelated issue. At that time, the Debtors owned an approximate 7% (after payout) interest in the Champions Field (an oil and gas property). Encore also happened to own an ownership interest in the Champions Field.

In March, 2017, Encore wanted to roll up its interest in the Champions Field into a new company called Riley Exploration Permian, LLC (the "Roll Up"). However, the Debtors had no interest in participating in the Roll Up and the Roll Up could **not** occur unless all of the owners of the Champions Field agreed. The Roll Up was crucial for Encore as it indirectly provided Encore with the only reasonable means it had to pay off a $40 million bank loan.

In order to induce the Debtors to participate in the Roll Up, Encore promised the Debtors that it would pay Dernick Land the $2.8 million it was owed (the "Roll Up Agreement"). The Debtors agreed, the Roll Up occurred, Encore paid off its $40 million bank note, but Encore never paid Dernick Land a single penny toward the $2.8 million obligation. The Debtors would never have entered into the Roll Up Agreement with Encore in the absence of the Defendants misrepresentations. As a result, the Plaintiffs have suffered actual damages and seek punitive damages against the Defendants for their breach of contract and fraud.

**JURISDICTION AND VENUE**

1. This is an adversary proceeding brought by Stephen Dernick and David Dernick ("Plaintiffs" or "Debtors") for breach of contract and fraud.

2. This Court has subject matter jurisdiction over this adversary proceeding, pursuant to 28 U.S.C. §§ 157 and 1334(b).

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (2) and this Court may enter a final order consistent with these statutes and Article III of the United States Constitution.

4. Venue is proper in the Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), pursuant to 28 U.S.C. § 1409.

5. The Debtors hereby state that they consent to the entry of final orders or judgments by the Bankruptcy Court if it is determined that the Bankruptcy Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**PARTIES**

6. Stephen Dernick is a chapter 11 Debtor in Bankruptcy Case No.18-32417, pending in the Southern District of Texas, Houston Division.

7. David Dernick is a chapter 11 Debtor in Bankruptcy Case No. 18-32494, pending in the Southern District of Texas, Houston Division.

8. Defendant, Dernick Encore, LLC, may be served with process though its registered agent - CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

9. Defendant, Robert Carson is an individual who may be served with process at 880 Winter Street, Suite 350, Waltham, MA 02451.

10. Defendant, David H. Russell is an individual who may be served with process at 20201 E. Country Club Rd., Apt 2027, Aventura, FL, 33180.

11. Defendant, David H. Russell Family Ltd Partnership, LLP, may be served with process at 20201 E. Country Club Rd., Apt 2027, Aventura, FL, 33180.

12. Defendant, NorthStar Gas Ventures, LLC, may be served with process at 880 Winter Street, Suite 350, Waltham, MA 02451.

13. Defendant, Encore Alliance is a Delaware corporation and may be served with process through its registered agent – Blumberg Excelsior Corporate Services, Inc. at 1013 Centre Road, Suite 403S, Wilmington, DE 19805.

## BACKGROUND FACTS

**CREATION OF DERNICK ENCORE**

14. Stephen Dernick and his brother, David Dernick (the "Dernicks" or the "Debtors") have been partners in the oil and gas exploration and production business for nearly thirty-seven

years.

15. The Dernicks own 100% interest in Dernick Land, LLC ("Dernick Land"), an oil and gas exploration and production company.

16. Dernick Land is a special purpose entity that was formed to be a member of Dernick Encore ("Encore).

17. When the Debtors formed Encore in 2010, the Debtors invited NorthStar Gas Ventures, LLC ("NorthStar") and the Russell Family Partnership, LLP ("Russell") to participate as investors in Encore.

18. The original three owners of Encore were:
    a. **Dernick Land** - with a 50% ownership;
        i. Dernick Land was the managing member of Encore.
    b. **NorthStar Gas Ventures, LLC** ("NorthStar") with a 25% ownership; and
        i. Robert Carson ("Carson") is the managing member of NorthStar.
        ii. NorthStar is owned by six special purpose companies owned by the following individuals: Ray Stata, Alan Spoon, Terry McGuire, Jon Flint, Joseph Von Richenbok and Norm Payson.
    c. **Russell Family Partnership LP** ("Russell FP") with the remaining 25% ownership.
        i. David Russell ("Russell") manages Russell FP.

**FINANCIAL CONTRIBUTIONS MADE TO DERNICK ENCORE**

19. At inception, the Dernicks initially borrowed $2.5 million from Russell and NorthStar for a total of $5.0 million, all of which the Debtors contributed to Dernick Land (the "Notes").

20. The Notes had a three-year term, maturing in 2013.

21. Dernick Land, in turn, contributed the $5.0 million to Encore as Dernick Land's initial capital contribution for common units in Encore.

22. In 2011, Encore Alliance, LLC ("Alliance"), acquired an ownership interest in Encore, and also loaned $2.1 million to the Dernicks.

23. The Dernicks infused the $2.1 million into Dernick Land and then Dernick Land transferred the $2.1 million to Encore as an additional capital contribution to avoid the dilution of Dernick Land's interest in Encore.

24. In total, for Dernick Land's capital contributions to Encore for common units, the Dernicks together ultimately borrowed a total of $12.188 million from the following entities:

    a. $2.5 million from NorthStar;

    b. $7.5 million from Russell FP; and

    c. $2.1 million from Alliance.

(Collectively referred to as the "Three Investors")

25. The Notes from the Three Investors matured in 2013.

26. In 2013, as a condition to the Three Investors agreeing to extend the original notes, Dernick Land's ownership in Encore was diluted from 50% to 35%.

27. This resulted in the following ownership of Encore:



### INVESTORS CALL THE NOTES AND DERNICK LAND LOSES ITS INTEREST IN ENCORE

28. Because of Encore's significant success, the Dernicks anticipated that the Three Investors would agree to extend the maturity date for the Notes until Encore monetized its properties.

29. However, in April 2013, the Three Lenders only agreed to amend and revise the Notes with a high interest rate of 18% and a shortened maturity date of January 5, 2016 (the "Revised Notes").

30. The Revised Notes provided that *"Absent an election by Payee to have less than its entire outstanding balance due converted immediately following the Maturity Date, any outstanding principal and interest due shall be automatically converted into additional Member Interests in Dernick Encore to be transferred out of Dernick Land's ownership interest…"*

31. No elections were made by the Three Investors prior to the maturity date (i.e. January 5,

2016), and therefore, on January 6, 2016, Dernick Land's entire 35% common unit ownership in Encore was transferred to the Three Investors.

32. Therefore, after January 6, 2016:
    a. Dernick Land no longer owned an interest in Encore, and
    b. The Dernicks satisfied their obligations in full under the Revised Notes.
33. At this point, Stephen and David Dernick decided to resign and move on to new ventures.

**THE BANK GETS INVOLVED WHEN IT LEARNED THAT THE DERNICKS WERE LEAVING**

34. Benefit Street Partners ("BSP" or the "Bank") was Encore's merchant bank and was owed over $35 million from Encore in January 2016.
35. Immediately after the Dernicks lost their interest in Encore, David Russell travelled to Houston to meet with BSP to explain his/Encore's plan to install a new management team now that the Dernicks and Dernick Land were no longer involved with Encore.
36. BSP told Russell that the terms of the $35 million loan to Encore provided that BSP could call Encore's note, *in full*, if
    a. Dernick Land ceased to be the managing member of Encore; and/or
    b. Stephen Dernick ceased to be the managing member of Dernick Land.
37. In January, 2016, Encore did not have the means to repay the loan in full to BSP.
38. As a result of the Bank's threat to call the $35 million loan, Encore, NorthStar, Alliance, Robert Carson, Russell, and Russell FP (the "Defendants") devised a plan to convince the Debtors/Dernick Land to remain involved with Encore.

**ENCORE TRICKED DERNICK LAND INTO WORKING FOR FREE**

39. Despite Dernick Land no longer owning any of its 35% interest in Encore, the Defendants requested Dernick Land to continue on as the managing member of Encore in order to prevent BSP from calling the loan.
40. Dernick Land agreed to stay on as the managing member because Encore promised to pay Dernick Land $208,333.33 per month in management fees, plus expenses (the "Management Agreement").
41. Dernick Land performed under the Management Agreement from March 1, 2016 through February 28, 2017.
42. By February 28, 2017, Dernick Land was owed approximately $2.8 million pursuant to the Management Agreement, but Encore refused to pay Dernick Land the promised fees and

expenses ("$2.8MM").

43. As a result of Encore's failure to pay Dernick Land, Dernick Land was unable to pay the Debtors their salaries for an entire year.

**DEBTORS' INTEREST IN THE CHAMPIONS FIELD**

44. Around the same time that Encore refused to pay Dernick Land the $2.8MM, the Debtors were dealing with a completely unrelated issue.

45. At that time, the Debtors owned an approximate 7% (after payout) interest in the Champions Field (a very successful oil and gas property). Encore also owned an ownership interest in the Champions Field.

46. In April, 2017, the following parties had an ownership interest in the Champions Field:
    a. **The Debtors;**
    b. **Dernick Encore;**
    c. Boomer Exploration, LLC;
    d. Riley Exploration Group;
    e. Dr. Robert G. Dernick;
    f. Christopher M. Bearrow;
    g. Dennis W. Bartoskewitz; and
    h. Alan C. Buckner.

47. In March, 2017, the Debtors were approached by Encore and asked if the Debtors would roll up their interest in the Champions Field into a new company called Riley Exploration Permian ("Permian"), in anticipation of an IPO (the "Roll Up").

48. The Roll Up could not occur unless <u>all</u> of the interest holders in the Champions Field would agree.

49. Stephen and David Dernick did not have any desire to roll their interest in the Champions Field into Permian as the Debtors would be rolling in at a discounted value.

50. Encore and Carson put a tremendous amount of pressure on the Debtors to agree to the Roll Up as the Roll Up was extremely important to Encore as it ensured Encore would have the funds available be able to pay off its $40 million obligation to the Bank.

**THE ROLL UP AGREEMENT**

51. The Defendants promised the Debtors that in exchange for participating in the Roll Up, Encore would do the following (the "Roll Up Agreement"):

   a. Issue the Debtors a full release;
   b. Arrange for a seat on the board of Riley; and
   c. Pay Dernick Land the approximate $2.8 million it pursuant to the Management Agreement (the "$2.8MM").

52. In order to induce the Debtors to agree to the Roll Up, Carson confirmed that Encore would sell specific properties it owned, Shafter Lake and Murfin, (the "Properties") in order to have the means to pay toward the $2.8MM obligation Dernick Land, pursuant to the Roll Up Agreement.

53. The Debtors fulfilled their obligations under the Roll Up Agreement and transferred their interest in the Champions Field to Permian.

54. As soon as the Roll Up was finalized:
   a. Encore paid off the $40MM Bank loan in full;
   b. Encore sued the Debtors in federal district court; and
   c. Encore failed to pay Dernick Land a single penny toward the $2.8MM.

55. Encore never intended to pay Dernick Land the $2.8MM.

56. The Defendants knew this representation was false when it was made under the Roll Up Agreement.

57. Encore never intended to use the proceeds it received from the sale of the Properties to pay toward the $2.8MM.

58. The Debtors simply induced the Debtors to enter into the Roll Up Agreement by misrepresenting material facts - that Encore would pay toward the $2.8MM owed to Dernick Land with the proceeds it received from the sale of the Properties (the "Representations").

59. The Debtors actually relied on the Representations when entering into the Roll Up Agreement.

60. The Debtors would never have entered into the Roll Up Agreement if they knew that Encore never intended to perform and pay Dernick Land the $2.8MM after the sale of the Properties.

61. The Debtors would never have given up their valuable interest in the Champions Field if they knew that Encore and the Defendants never intended to keep their promises.

## CAUSE OF ACTION: BREACH OF CONTRACT

62. The elements of an action for breach of contract are as follows:

    a. There is a valid, enforceable contract.

    b. The Plaintiff is a proper party to sue for breach of the contract.

    c. The Plaintiff performed.

    d. The Defendant breached the contract.

    e. The Defendant's breach caused the Plaintiff injury.

*See Marquis Acquisitions, Inc. v. Steadfast Ins.*, 409 S.W. 3d 808, 813-14 (Tex.App. – Dallas 2013, no pet.)

63. Here, the Debtors and Encore entered into a written contract. The Roll Up Agreement is a valid and enforceable contract.

64. The Debtors were a party to the Roll Up Agreement with Encore.

65. The Debtors fully performed all of their obligations under the Roll Up Agreement, and all occurrences or conditions precedent have occurred or been fulfilled as the Debtors rolled up their interest in the Champions Field, and nothing is left to be done by the Debtors.

66. Encore breached the contract as it never paid Dernick Land the $2.8MM.

    a. A breach is material when the defendant does not substantially perform a material obligation or duty required under the contract. *See Cowman v. Allen Monuments, Inc.*, 500 S.W. 2d 223, 226-227 (Tex.App. – Texarakana 1973, no writ)

    b. Encore's failure to pay Dernick Land the $2.8MM was a material breach.

67. Encore's breach caused the Debtors injury.

    a. The Plaintiff must show the injury is a natural, probable, and foreseeable consequence of the defendant's breach. *Mead v. Johnson Grp.,* 615 S.W. 2d 685, 687 (Tex.1981).

    b. Here, Encore's failure to pay Dernick Land caused injury to the Debtors as the Debtors are the owners of Dernick Land.

    c. In addition, the Debtors' gave away their valuable interest in the Champions Field which has also caused them injury.

**REMEDIES FOR ENCORE'S BREACH OF CONTRACT**

68. Every breach of contract gives rise to a claim for damages and may also give rise to equitable remedies. *Houston v. Pipe Line Co. v. Oxy Pet. Inc.,* 597 S.W. 2d 57, 59 (Tex.App. – Corpus Christi 1980, writ dism'd).

69. In an action for breach of contract, the plaintiff can recover actual damages. *Mead v. Johnson Grp.*, 615 S.W.2d 685, 687 (Tex.1981).

70. Here, the Debtors had actual economic damages as the Debtors gave up their interest in the Champions Field in exchange for Encore's promise to pay Dernick Land $2.8MM.

71. The Debtors seek prejudgment and post-judgment interest and court costs.

72. Furthermore, the Debtors seek reasonable attorney fees under Texas Civil Practice and Remedies Code § 38.001.

**DEFENDANTS' LIABILITY FOR THE BREACH OF CONTRACT**

73. In addition to Encore's liability for breach of contract, the principles of Encore (i.e. NorthStar, Russell FP, and Encore Alliance) are also liable to the Debtors as Encore has forfeited its rights to do business in Texas, and therefore the individual owners of Encore are liable to the Debtors for all damages.

## CAUSE OF ACTION: FRAUD/FRAUDULENT INDUCEMENT

74. A cause of action for fraud includes the following **elements**:
    a. The defendant made a representation to the plaintiff.
    b. The representation was material.
    c. The representation was false.
    d. When the defendant made the representation, the defendant knew the representation was false or made the representation recklessly, as a positive assertion and without knowledge of its truth.
    e. The defendant made the representation with the intent that the plaintiff act on it.
    f. The plaintiff relied on the representation.
    g. The representation cause the plaintiff injury.
    *See Italian Cowboy Partners v. Prudential Ins.,* 341 S.W. 3d 323, 337 (Tex. 2011).

75. **Defendants Made Representations to the Plaintiff:**
    a. Here, Encore made the Representations to the Debtors when Carson promised the Debtors that Encore intended on selling the Properties for the purpose of paying toward the $2.8MM owed to Dernick Land.
    b. In addition to Encore, the following parties are also liable to the Debtors for fraud:

      i. **Robert Carson** ("Carson") – Carson is liable as he made the Representations to the Debtors, and Carson was **Encore's agent** at the time the Representations were made.

          1. An agent can be liable individually for its own act of fraud performed for its principal. *See Nwokedi v. Unlimited Restoration Specialists, Inc.* 428 S.W. 3d 191, 201 (Tex.App – Houston [1st Dist.] 2014, pet. denied.

          2. Carson is also individually liable to the Debtors as he was a **beneficiary of the fraud** and had knowledge of the fraud. *See First State Bank v. Fatheree*, 847 S.W. 2d 391, 396 (Tex.App. – Amarillo 1993, writ denied)

      ii. **NorthStar, Alliance, Russell, and Russell FP** (the "Remaining Defendants") are also liable to the Debtors for the Representations made to the Debtors as they are all **beneficiaries of the fraud**. The Remaining Defendants should be vicariously liable for the fraudulent acts of Encore/Carson as they benefited from the fraudulent transaction and had knowledge of the fraud. The Remaining Defendants benefited from the Roll Up as it allowed Encore to pay off its $40MM obligation to the Bank. The Remaining Defendants also benefited from the fraudulent transactions as Encore never paid (nor ever intended to pay) Dernick Land the $2.8MM it is owed.

      iii. Furthermore, Encore has forfeited its rights to do business in Texas, and therefore the individual owners of Encore (i.e. NorthStar, Russell FP, and Encore Alliance) are liable to the Debtors for the fraud and the damages caused by the fraud.

76. **Representation was material:** A false representation is material if it is important to the plaintiff in making a decision – that is, if a reasonable person would attach importance to and be induced to act on the information in determining whether to make a transaction. *Lundy v. Masson*, 260 S.W. 3d 482, 493 (Tex.app. – Houston [14th Dist.] 2008, pet. denied). Here, the Debtors only decided to enter into the Roll Up Agreement because Carson

promised that Encore would pay the $2.8 million owed commencing with the sale of the Properties, using the sales proceeds to pay Dernick Land toward the $2.8MM it was owed.

77. **Representation was false:** A false promise of future performance is actionable as a false representation. *Aquaplex, Inc. v. Rancho La Valencia, Inc.,* 297 S.W.3d 768, 774 (tex.2009). Here, the Defendants made a false promise (i.e. the Representations) with no intention of performing it.

78. **Representations were made knowingly or recklessly**: Here, the Defendants were aware of the Representations made to the Debtors, knew they were false, and did so knowingly.

79. **Intent that the Debtors rely on the Representations:** Here, the Defendants clearly intended for the Debtors to rely on the Representations. Not only did the Defendants intend for the Debtors to act in reliance on the Representation, but the Debtors incurred a pecuniary loss that the Defendants intended or at a minimum had reason to expect.

   a. **Fraud**- Here, the Defendants had information from which a reasonable person would conclude the result would follow.

   b. **Fraudulent Inducement** – In fraudulent inducement cases, the defendant usually must have reason to expect that the plaintiff will enter into a binding agreement based on the false representations. *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W. 2d 41, 48 (Tex. 1998). Here, the Defendants induced the Debtors to enter into the Roll Up Agreement by making the Representations with no intent to perform. The Defendants promised to use the proceeds from the sale of the Properties to pay toward its obligation to Dernick Land with no intent to perform. *See DeSantis v. Wackenhut Corp.,* 793 S.W. 2d 670, 689 (Tex. 1990).

80. **The Debtors relied on the representation:** Here, the Debtors actually and justifiably relied on the Representations made by the Defendants.

   a. **Fraud** – For simple fraud, the Debtors must show that they knew of the representations and acted on it. *Johnson v. Johnson,* 924 S.W. 2d at 930. Here, Carson confirmed in writing that the sale of the Properties would be used to pay toward the $2.88M owed to Dernick Land.

   b. **Fraudulent Inducement** – For fraudulent inducement, the plaintiff must prove it actually entered into a binding agreement based on the representation. Here, the Debtors entered into the Roll Up Agreement.

81. **The representation caused the plaintiff injury:** Here, the Debtors relied on the Defendants' representations to their determinant. *See Johnson v. Brewer & Pritchard, P.,C.* 73 S.W.3d 193, 211 (Tex. 2002).

    a. **Causation** - The appropriate standard for causation depends on whether the Debtors seek direct damages or consequential damages. The standard of causation does not depend on the type of injury the Debtors suffered. Here, the Debtors seek consequential damages. Therefore, the Debtors must show that the Defendants' fraud proximately caused the damages. *Libhart v. Copeland,* 949 S.W.2d 783, 799-800 (Tex.App. – Waco 1997, no writ). Here, the fraud was a substantial factor in bringing about the damages (i.e. loss of the Debtors interest in Champions Field).

    b. **Injury** - The Debtors suffered economic/pecuniary injuries as a result of the Defendants' fraudulent misrepresentations.

**REMEDIES FOR FRAUD**

82. As a proximate result of the Defendants' fraud, the Debtors have incurred substantial and actual damages.

83. The Debtors suffered a pecuniary loss as a result of their reliance on the Representation.

84. The Debtors would never have agreed to roll up their interest in the Champions Field had they known the Defendants were not going to use the proceeds from the sale of the Properties to pay toward the $2.8MM owed to Dernick Land

85. Therefore, the Debtors are entitled to the difference between the value of their interest in the Permian and the value of the interest in the Champions Field that they were induced to give away.

86. The Debtors will further show that the conduct of the Defendants as described above was fraudulent and malicious, and that the Defendants false representations were made with actual awareness of the falsity.

87. As a result, the Debtors are entitled to recover exemplary damages to deter fraudulent conduct by others in the Debtors' situation. The Defendants are extremely wealthy individuals who can easily take advantage of others. As seen in the Debtors' pending Chapter 11 cases, Robert Carson has hired multiple expensive law firms to represent his entities and has incurred hundreds of thousands of dollars in attorneys fees. In fact, Encore

incurred over $100,000.00 in attorney's fees for litigating one contested matter in the Debtors' bankruptcy cases.

88. "A finding of intent to harm or conscious indifference to the rights of others will support an award of exemplary damages." *Trenholm v. Ratcliff,* 646 S.W.2d 927, 933 (Tex.1983)

89. Here, the Defendants intended to cause harm to the Debtors.

90. The Defendants are entitled to recovery for punitive damages.

91. As a result of the Defendants failure to perform their obligations under the Contract, the Plaintiffs have been required to obtain legal counsel to prosecute this action.

92. The Debtors are entitled to recover a reasonable amount as attorneys' fees for the services rendered by their counsel in this Adversary.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Debtors ask that they be awarded a judgment against Defendants, jointly and severally, for the following:

  a. Defendants' specific performance of their contractual obligations, together with additional damages in excess of $2,800,000.00;
  b. Liquidated damages calculated by the difference in value between the Debtors' lost interest in the Champions Field and their current interest in Permian;
  c. Exemplary damages/Punitive damages;
  d. Prejudgment interest at the maximum rate allowable by law;
  e. Post-judgment interest at the maximum rate allowable by law;
  f. All costs of this proceeding, including expert witness fees, deposition costs, and court costs;
  g. Attorneys' fees and expenses; and
  h. All other relief to which Plaintiffs are entitled at law or in equity.

Dated: July 9, 2019.

Respectfully submitted,

By: /s/ Miriam Goott
Miriam Goott
*Counsel For The Debtors*
SBN#24048846

OF COUNSEL:
WALKER & PATTERSON, P.C.
P.O. Box 61301
Houston, TX 77208-1301
(713) 956-5577
(713) 956-5570 (fax)
**mgoott@walkerandpatterson.com**